UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

GIORGIO PROUSE
Via Patroclo n. 19
Milan Italy,                                                    Case No.: 12-CV-644

                Petitioner,
  and

ROBIN K. THORESON
1445 North State Parkway, #308
Chicago, Illinois 60610,

                Respondent.

**RESPONDENT'S REBUTTAL BRIEF IN OPPOSITION
TO PETITION FOR RETURN OF CHILD**

**INTRODUCTION**

Petitioner maintains that the expedited hearing schedule set by the Court was adequate time because "both parties left that hearing with the same six-day time to prepare." (Petitioner's Reply Brief in Support of Petition For Return Of Child at pg. 2, ECF No. 32.)  Ms. Thoreson was the only party unaware of the impending hearing. She was served with the Petition here in the Western District of Wisconsin and saw the pleadings for the first time late on Friday, September 7, 2012.  Dr. Prouse, in the meantime, had filed his Hague action in Italy on or about July 30, 2012, giving him well over a month to prepare for this hearing. (Petitioner's Trial Exhibit 3 ECF No. 32-1). Dr. Prouse also filed a criminal complaint against Ms. Thoreson in Italy on or about July 30, 2012.  (Petitioner's Trial Exhibit 4 ECF No. 32-2).  Dr. Prouse provided Ms.

1

Thoreson with this documentation for the first time at the September 18th hearing before this Court when the documents were marked as trial exhibits. In the intervening time period, he never told Ms. Thoreson of his actions in Italy or his plan to file here in Wisconsin, nor did he demand or ever request that J.P. be returned to Italy to avoid such a frantic "emergency hearing". This course of action was carefully orchestrated and executed to gain a strategic procedural advantage under the Hague Convention and leave inadequate time for Ms. Thoreson to fully prepare and present her case. This calculated posturing is precisely the opportunistic behavior the Convention is designed to discourage. It should be abundantly clear that there was never any real or perceived "emergency" regarding J.P. to necessitate such an exacting schedule. One must ask: What was Dr. Prouse's real motivation in putting his family unnecessarily through such financial, emotional and stressful legal proceedings?

**RESPONDENT HAS SHOWN BY CLEAR AND CONVINCING EVIDENCE THAT THE PARTIES' LAST SHARED INTENT WAS TO RELOCATE J.P.'s HABITUAL RESIDENCE TO THE UNITED STATES**

Petitioner argues that there was never a shared intent to move the family to the United States. The only basis for this argument is Petitioner's subjective, self-serving testimony. All of the objective and undisputed evidence demonstrates a clear intended decision by the parties to move to the United States in the fall/winter of 2011 to seek better financial and economic opportunities. Ms. Thoreson will not revisit all of the established factual basis set forth in her Brief in Response. However, the Court simply cannot ignore some of the salient, fundamental facts including:

(1) Dr. Prouse himself wrote to J.P.' school on September 2, 2011, to advise that she would no longer be attending school because of the family's imminent move to the United States for reasons of work. (Trial Tr p. 66 lines 4-9 and p. 55 lines 17 through p.56 lines 1 -15 ECF No. 24 along with Respondent's Trial Ex. 2).

(2) Dr. Prouse himself signed the four to eight year lease on the family home in late fall or early winter 2011, letting out the family home effective February 1, 2012. (Trial Tr. p. 54 lines 5 through p.55 line 11 ECF No. 24 and Respondent's Trial Ex. 1).

(3) Dr. Prouse himself purchased the airline tickets to allow Ms. Thoreson and J.P. to move the family pets to the United States on December 28, 2011. (Trial Tr. p.104 lines 13-18 and p. 68 lines 16 through p.69 line 1, ECF No. 24).

(4) Dr. Prouse never made any request, demand or inquiry as to J.P.'s return to Italy until a month after he was served with divorce papers and had hired an attorney; then he filed criminal charges and the Hague actions.

Intent is not to be determined by the parties' testimony after litigation is underway.

> In *Koch v. Koch,* 450 F.3d 703 (7th Cir.2006), we discussed in detail how habitual residence should be determined, and we adopted a version of the analysis set out by the Ninth Circuit in *Mozes v. Mozes,* 239 F.3d 1067 (9th Cir.2001). The question is whether a prior place of residence (in this case, the United States) was effectively abandoned and a new residence established (here, Sweden) "by the shared actions and intent of the parents coupled with the passage of time." *Koch,* 450 F.3d at 715. **Often parents will not agree about what their shared intentions were once litigation is**

3

> **underway, and so we must take account of the parents' actions as well as what they say.** (citation omitted, emphasis added).

<u>Norinder v. Fuentes</u>, 657 F.3d 526, 534 (7th Cir. 2011).

All of Dr. Prouse's actions, e-mails and conversations prior to divorce papers being served confirm the intent of the parties was to relocate the family to the United States. Try as he might to explain away his behavior and individual actions, the totality of the evidence is not only clear and convincing, it is overwhelming that when J.P. and Ms. Thoreson left Italy in December of 2011 it was the intent of the family to abandon their habitual residence in Italy and resettle in the United States. "One's actions may belie any declaration that no abandonment was intended". <u>Silvestri v. Oliva</u>, 403 F. Supp. 2d 378, 384 (D.N.J. 2005) citing <u>Mozes v. Mozes</u>, 239 F.3d 1067, 1075 (9th Cir. 2001).

Petitioner's reply brief is duplicitous in arguing on one hand Dr. Prouse was so emotional following his announcement to terminate the marriage that on April 17, 2012, he made the suggestion that J.P. and Ms. Thoreson move to Arizona (Petitioner's Reply Brief in Support of Petition For Return Of Child at pg. 4, ECF No. 32.), and conversely that Ms. Thoreson's unanswered pleas to move anywhere with her husband somehow indicate an unsettled intent. (Petitioner's Reply Brief in Support of Petition For Return Of Child at pg. 3, ECF No. 32.). The truth is Dr. Prouse made the calculated decision to end the marriage after the family had acted on the joint intent of the parties and had moved to the United States. He confirmed his consent to the move in his actions and statements immediately subsequent to terminating the marriage. On April 13th, the day she was unilaterally told her marriage was over, while Ms. Thoreson was reeling from the

4

announcement, she desperately proposed to again change the plans of the family to move somewhere else in order to keep her family together. (Respondent's Trial Exhibits 9 & 10). All of her subsequent requests to Dr. Prouse to reconsider and keep their family intact went unacknowledged, and in fact, he never suggested or requested that Julia alone return to Italy. (Trial Tr. p. 79 lines 11 p. 80 line 20, ECF No. 24).

In his reply brief Petitioner also relies on his purported emotional state on July 13, 2012, as the justification for his statement to Ms. Thoreson that some other man would be bringing up J.P. and that she should keep him updated as to J.P. (Petitioner's Reply Brief in Support of Petition For Return Of Child at pg. 4, ECF No. 32 and Respondent's Trial Ex. 13.) This e-mail comes some three months after his decision to end the marriage and in reality is further affirmation of his prior agreement and consent to move J.P. to the United States.

Petitioner takes the position that because not every detail of the move was set forth with specificity and permanency that there was no intent to move to the United States. This is contrary to the actions of the parties and all reported case law. Even where the parties did not intend a permanent move and instead only intended to live for a limited period of time while trying to resolve financial or marital problems, "that intent is still sufficient to establish a new habitual residence". *Silvestri,* at 385, citing <u>In re Application of Sasson v. Sasson,</u> 327 F. Supp. 2d 489, 500 (D.N.J. 2004).

The fact that Ms. Thoreson and J.P. were temporarily residing with her parents is evidence of the parties' shared plan to improve their economic position by saving rent, avoiding child care expenses and increase Ms. Thoreson's work schedule while awaiting

Dr. Prouse to complete his internship. Ms. Thoreson's e-mail of June 8, 2012, regarding the rental of a condominium near J.P.'s riding stable was the result of Dr. Prouse's decision not to join his family and Ms. Thoreson's recognition that she needed to move forward with J.P. on her own. (Petitioner's Trial Ex. 2, June 8, 2012 e-mail from Ms. Thoreson). Dr. Prouse did not respond to Ms. Thoreson that she should not be looking for a place to live with J.P. for the following year. Instead, the record reflects the next exchange of e-mails is dated June 27, 2012, in which Ms. Thoreson inquired: …"How can you just walk away from [j.p], myself and our life we have built together?"… Dr. Prouse responded, "I think it is best if we keep it the way we originally planned it. Neither of us is able or ready to change our basic position. This is a big part of who i (sic) am i (sic) need to share it with you. i (sic) have started living it by myself instead"….. (Petitioner's Trial Ex. 12, June 27, 2012 e-mail stream.) Once again, Dr. Prouse's message confirms the parties' intent to move to the United States, to keep the original plan and that now he will be living by himself instead of with his family.

Ms. Thoreson did not attempt to "piece together facts" to establish a joint intent. (Petitioner's Reply Brief in Support of Petition For Return Of Child at pg. 4, ECF No. 32). Given the time constraints for the hearing she attempted to put as much evidence as possible before the court to tell the true, full story. Although Dr. Prouse had ample time and notice to prepare for a hearing he brought no objective evidence or independent witnesses to substantiate his self-serving subjective testimony. The fact that Dr. Prouse declined to take the stand to controvert Ms. Thoreson's truthful testimony as to his statements and actions was not due to the hearing going past 5:00 or the Court's failure to

6

allow the time necessary for the taking of his testimony as alleged by Petitioner. (Petitioner's Reply Brief in Support of Petition For Return Of Child at pg. 5, ECF No. 32). In fact, the Court made it clear to the parties that because Dr. Prouse had come from Italy for the hearing, any and all testimony from Dr. Prouse needed to be received on the record during the September 18, 2012 hearing. At no time did the Court indicate it was unwilling to entertain further testimony. Dr. Prouse completely failed to proffer any plausible explanation or response to Ms. Thoreson's testimony, just as he failed to offer any testimony regarding plans for J.P.'s return to Italy in August, her registration for any school in Italy, or a new family residence. The reason he failed to make any such record was not due to "insufficient time" allocated by the Court, it was because no such evidence exists.

## **PETITIONER FAILED TO ADDRESS THE APPLICABLE PRECEDENT IN EITHER OF HIS BRIEFS TO THIS COURT**

Petitioner complains that "Ms. Thoreson does not acknowledge the test of acquiescence that the Sixth Circuit set forth in its Friedrich II decision. See Friedrich v. Friedrich, 78 F. 3d 1060,1070 (6th Cir. 1996)". (Petitioner's Reply Brief in Support of Petition For Return Of Child at pg. 5, ECF No. 32). This is a mischaracterization of Ms. Thoreson's Brief in Opposition. Ms. Thoreson clearly discusses the inapplicability of *Friedrich* at pages 19-20 of her brief and demonstrates that the *Friedrich* is not applicable law in the Seventh Circuit. (Respondent's Post Hearing Brief in Opposition to Petition for Return Of Child at pg. 19-20, ECF No. 30).

7

There is a division in the Circuits regarding the role of parental intent in cases brought pursuant to the Hague Convention.  The distinction is well explained in "The 1980 Hague Convention on the Civil Aspects of International Child Abduction; *A Guide for Judges;* Federal Judicial Center International Litigation Guide, 2012; Honorable James D. Garbolino at Chapter II, Section D. 2. "The Role of Parental Intent".

Our Seventh Circuit did reference *Friedrich* in a string cite as to the appropriate standard of review in a case involving the Hague Convention <u>Koch v. Koch</u> 450 F. 3d 703, 710 (7th Cir. 2006).  However, instead of adopting the *Friedrich* "test of acquiescence" from the Sixth Circuit the Seventh Circuit Court clearly decided to adopt the Ninth Circuit's analysis set forth in <u>Mozes v. Mozes</u>, 239 F.3d 1067 (9th Cir. 2001) regarding "last shared intent" in determining habitual residence, *Koch* at 715.   Petitioner has completely failed to acknowledge, distinguish or in any manner reference the controlling legal standard found in *Mozes* and *Koch*.

Even under the *Friedrich* "test of acquiescence", Ms. Thoreson has certainly prevailed in demonstrating Dr. Prouse's ongoing acquiescence from September of 2011 through the move from Italy in December; his April announcement of the end of the marriage; the planned vacation of J.P. to Italy in July and August of 2012 with her return to the United States in August of 2012 (Trial Tr. p.86 lines 13- p.87 line 7, ECF No. 24; and Respondent's Trial Exhibits 14 & 15); his request for a guaranteed seat on a return flight from the United States to Italy "at the end of August 2012" (Trial Tr. p.98 lines 1-23, ECF No. 24; Respondent's Trial Ex. 24); until the time of service of the divorce proceedings and for a month thereafter.  He completely acquiesced in his previous

8

decision for J.P. to live in the United States right up to the date he hired a lawyer who apparently decided, and convinced Dr. Prouse, that he in fact never did "consent" or "acquiesce", despite the overwhelming evidence to the contrary.

## CONCLUSION

Dr. Prouse and Ms. Thoreson made a joint decision to move their family to the United States. They intended for J.P. to move here with Ms. Thoreson and to abandon their habitual residence in Italy. The parties executed the plan. Dr. Prouse changed his mind about the marriage and the family but not about J.P.'s residence until legal proceedings began and lawyers got involved in the process. Legal posturing is not a basis to change the clearly established last shared intent of these parties. Ms. Thoreson respectfully requests that this Court deny the petition, enter a decision finding the United States is now J.P.'s habitual residence and award Ms. Thoreson her actual costs and attorneys' fees in defending this ill-conceived action.

Respectfully submitted this 10th day of October, 2012.

SIPSMA, HAHN & BROPHY, L.L.C.

By: /s/ *Kenneth R. Sipsma*
Kenneth R. Sipsma
State Bar Member No. 1022383
Josann M. Reynolds
State Bar Member No. 1014655
701 East Washington Avenue, Suite 201
Madison, Wisconsin 53703
(608) 243-1230
*ksipsma@shblawyer.com*

ATTORNEYS FOR ROBIN K. THORESON